UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY LAWRENCE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TVS SUPPLY CHAIN SOLUTIONS ) <br> NORTH AMERICA, INC., et al. ) <br> ) <br> Defendants. ) | Case No. 4:19-cv-00169-SNLJ |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James Brand's motion to dismiss (#9). For the reasons stated below, that motion is **GRANTED**. Brand is hereby dismissed from this case.

**I. BACKGROUND**

The facts of this case were recently stated in *Lawrence v. TVS Supply Chain Sols. N. Am., Inc.,* 2019 WL 3343462 (E.D. Mo. July. 25, 2019). For purposes, here, the following facts are restated as pertinent to Brand's motion:

> Plaintiff states that he has a "history of disability," which includes mycosis fungoides and post-traumatic stress disorder—the former of which requires "phototherapy sessions" to address lesions that can cause "severe itching, contact dermatitis, peeling, burning, and cracked skin." In the summer of 2016, plaintiff was hired by TVS as a materials analyst at its Wentzville, Missouri, facility, which "provides supply chain services to the [nearby] General Motors [] Assembly Plant." For the first year-or-so of his employment, plaintiff's conditions appear to have had little consequence in the workplace.
>
> On July 17, 2017, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Union 282

1

(the "Union") was certified by the NLRB as the sole bargaining agent for TVS's Wentzville facility. A few months later, on September 11, 2017, TVS notified the Union of General Motors' efforts to downsize production. This prompted TVS to reduce its own shifts from four to three. On September 22, 2017, TVS and the Union signed a "memorandum of agreement," which outlined the process of altering TVS's "manning levels and job schedules." Pursuant to that memorandum, there would be three available shifts—a first, second, and third corresponding with morning, afternoon, and overnight—that employees would have to choose form. The second and third shifts had a slight pay premium. Placement into any particular shift was to be based on seniority if there happened to be an insufficient number of openings. As a result of this procedure, plaintiff was initially placed into second shift sometime around October 4, 2017— though he requested third shift as his top preference. As he explains it, plaintiff desired third shift because his phototherapy sessions were only available "during the daytime hours," because an overnight shift "reduce[s] the risk of exposure to sunlight, which exacerbate[s] his [condition]," and because an overnight shift would "reduce the risk of him having an episode of PTSD."

*Id.* at *1.

Adding to those facts, plaintiff's complaint alleges that "[o]n or about August 8, 2017, [he] was told he was going to be transferred to the second shift because he 'did not have seniority.' " At some unspecified time, plaintiff says he then "requested multiple workplace accommodations to defendant Brand that he stay on third shift[] because his phototherapy sessions were only administered during the daytime hours[.]" Brand purportedly responded that it was "out of his control." Believing Brand's "indifferent" response to be discriminatory, plaintiff's complaint alleges a failure-to-accommodate claim against Brand under Section 213.055 of the Missouri Human Rights Act (MHRA).

In addition, plaintiff has filed a retaliation claim against Brand under Section 213.070(2) of the MHRA. Plaintiff says Brand retaliated against him after plaintiff brought to light Brand's sexual harassment of a coworker. Plaintiff apparently first

2

disclosed this situation to leadership during an October 31, 2017, meeting in which plaintiff's workplace accommodation request was being discussed.

## II. ANALYSIS

Pursuant to Rule 12(b)(6), Brand argues plaintiff has failed to state claims against him because the MHRA no longer permits individual liability claims. FED. R. CIV. P. 12(b)(6). The issue, here, is whether plaintiff's claims accrued before or after the MHRA was amended to exclude individual liability.

In 2017, the Missouri legislature amended the MHRA with an effective date of August 28, 2017. *See Bram v. AT&T Mobility Servs., LLC.*, 564 S.W.3d 787, 794 (Mo. App. W.D. 2018). Relevant here, the definition of "employer" under the MHRA was amended to explicitly exclude from liability "an individual employed by an employer." *See* § 213.010(8)(c) RSMo. As has been determined by this Court and the Missouri Court of Appeals, the MHRA amendments do not have retroactive effect. *See Ranson v. Securitas Security Servs. USA, Inc.*, 2018 WL 4593707 at *2 (E.D. Mo. Sept. 25, 2018); *Bram v. AT&T Mobility Servs., LLC.*, 564 S.W.3d 787, 794 (Mo. App. W.D. 2018). Therefore, claims of employment discrimination or retaliation accruing after August 28, 2017, cannot be predicated on individual liability. *See Taylor v. Vitamin Cottage Natural Food Markets, Inc.,* 2019 WL 167422 at *4 (W.D. Mo. Jan. 10, 2019).

Cognizant of the August 28, 2017, cut-off date, plaintiff makes much of the fact that his complaint states that he was told about his shift change as early as August 8, 2017, and that he attempted to request an accommodation from Brand sometime thereafter—though the specific date was left unspecified. Even so, as the facts reveal,

3

plaintiff first sought an accommodation sometime in late September or early October 2017, well after the amended MHRA took effect. And even if it could be argued that plaintiff was making a preemptive accommodation request to Brand on or about August 8, 2017, the fact remains that plaintiff did not suffer an adverse action until October 4, 2017, when he was switched from third to second shift. *See Jordan v. Charter Communications, Inc.*, 2019 WL 1409353 at *3 (E.D. Mo. Mar. 28, 2019) (recognizing that "MHRA claim[s] accrue[] on the date the allegedly discriminatory conduct took place"). To establish a *prima facie* case under the MHRA, "a plaintiff must prove … the employer took adverse action against him," and the adverse action, here, did not occur until plaintiff's shift was changed—before that point, plaintiff's concerns were merely hypothetical. *Kader v. Bd. of Regents of Harris-Stow State Univ.*, 565 S.W.3d 182, 190 (Mo. banc. 2019) (quoting *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. App. E.D. 2011)); *see also* §§ 213,055.1(1)(a) RSMo. (making it unlawful to "discriminate against an individual" with respect to "his … terms, conditions, or privileges of employment" because of "disability"), 213.010(6) RSMo. (defining "discrimination" as "**conduct** proscribed herein" (emphasis added)).

Moreover, in consulting plaintiff's own complaint, it is clear that Brand did not deny plaintiff's accommodation request, nor did he have the power to grant it. Instead, according to plaintiff, the accommodation process continued well into December 2017 through interactions with "CIGNA[,] a third-party contractor that [] TVS contracted with … to handle workplace accommodation requests." Plaintiff stretches his argument too far by suggesting Brand's response that plaintiff's request was "out of his control" equaled

4

an outright denial of that request. If that were the case, plaintiff fails to explain why TVS forwarded his request on to CIGNA for further processing. It is also disingenuous to suggest "Brand failed to engage in an interactive [accommodation] process" with plaintiff when the old version of the MHRA, even if it were to apply, recognizes Brand as a mere extension of his employer, TVS, who plaintiff acknowledges continued to work through CIGNA to accommodate plaintiff well beyond August 28, 2017. *See* §§ 213.010(7), (14) RSMo. (2017) (treating as an "employer" both corporations and individuals, as well as agents working directly on behalf of either).

That same conclusion can be reached for plaintiff's retaliation claim, as well. The initial act of alleged workplace retaliation by Brand occurred, at the earliest, only after an October 31, 2017, meeting with TVS management when plaintiff first "complained of sexual harassment of a co-worker by defendant Brand." It was only after that meeting that plaintiff says "Brand found out about [his] complaint" and "retaliated against [him]." Once again, any retaliation would have occurred well after individual liability was extinguished under the MHRA.

### III. CONCLUSION

Because the claims against Brand accrued after August 28, 2017, there can be no individual liability against him under the MHRA. *See Jordan*, 2019 WL 1409353 at *3; *Bram*, 564 S.W.3d at 795.

Accordingly,

**IT IS HEREBY ORDERED** that defendant James Brand's motion to dismiss (#9) is **GRANTED**. Brand is hereby dismissed from this case.

So ordered this 5th day of September 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE